Bethany G. Lukitsch (SBN 314376)
Kamran B. Ahmadian (SBN 314566)
Alexandra Rahimi (SBN 340253)
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: 310.820.8800
Facsimile: 310.820.8859
*Email:* *blukitsch@bakerlaw.com*
*kahmadian@bakerlaw.com*
*arahimi@bakerlaw.com*

Attorneys for Defendant
MIXPANEL, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

BENJAMIN GLENN and ARA SARDARBEGIANS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MIXPANEL, INC.

Defendant.

Case No.: 3:25-cv-00927-VC

Hon. Judge Vince Chhabria

**DEFENDANT MIXPANEL, INC'S NOTICE OF MOTION AND MOTION TO DISMISS THE CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*[Filed concurrently with Declaration of Theodor Dumitrescu; Declaration of Alexandra Rahimi; and Request for Judicial Notice]*

**<u>Hearing</u>**:
Date: June 26, 2025
Time: 10:00 a.m.
Place: San Francisco Courthouse
Courtroom 4 – 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Action Filed: January 28, 2025

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on that on June 26, 2025 at 10:00 a.m., or as soon thereafter as the parties may be heard, before the Honorable Vince Chhabria, United States District Court, Courtroom 4, 17th Floor, 450 Golden Gate Ave., San Francisco, California, Defendant Mixpanel, Inc. ("Mixpanel") will and hereby does move for an order dismissing Plaintiffs Benjamin Glenn and Ara Sardarbegians' ("Plaintiffs") Class Action Complaint (Dkt. 1).

Mixpanel respectfully submits this Motion pursuant to (1) Federal Rule of Civil Procedure ("Rule") 12(b)(1) on the ground that Plaintiffs lack Article III standing because they did not suffer any concrete, particularized harm traceable to Mixpanel; and (2) Rule 12(b)(6) on the ground that Plaintiffs do not allege facts sufficient to state a violation of (a) the California Invasion of Privacy Act ("CIPA"), Penal Code § 638.51, (b) the California Wiretap Act, Penal Code § 631(a), and (c) Pennsylvania's Wiretapping and Electronic Surveillance Act ("WESCA"), 18 Pa. Con. Stat. §§ 5701, *et seq*.

This Motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Ted Dumitrescu, Declaration of Alexandra Rahimi, Request for Judicial Notice, the pleadings, records, and papers on file, and such argument and evidence as may be presented in connection with the hearing on this Motion.

Dated: April 8, 2025,

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: <u>*/s/ Kamran B. Ahmadian*</u>
Bethany G. Lukitsch
Kamran B. Ahmadian
Alexandra Rahimi

*Attorneys for Defendant*
MIXPANEL, INC.

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. Mixpanel Is a Service Provider That Helps Website And App Developers Like Upside Analyze Their Data ..... 2

B. All Upside Users Must Consent To Its Privacy Policy in Which it Discloses That It Shares Personal Data With Service Providers Like Mixpanel. ..... 3

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 5

A. Plaintiffs Lack Article III Standing. ..... 5

1. Plaintiffs Do Not Have A Reasonable Expectation of Privacy in Any Information Voluntarily Provided to Upside. ..... 6

2. Nothing Mixpanel Did Was "Highly Offensive." ..... 8

B. Plaintiffs' Consent Defeats Each Cause of Action. ..... 9

C. Plaintiffs' CIPA Section 631(a) Claim Fails. ..... 9

1. No Statutory Standing. ..... 10

2. No Violation of the Second Clause of Section 631(a). ..... 10

a. Plaintiffs do not allege that the "contents" of their communications were intercepted. ..... 10

b. Plaintiffs do not allege that their communications were intercepted while "in transit". ..... 11

3. The Section 631(a) Party Exception Also Applies. ..... 12

D. Plaintiffs' WESCA Claim Fails. ..... 13

E. Plaintiffs' Section 638.51 Claim Fails. ..... 14

V. CONCLUSION ..... 15


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 4, 5

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) (Koh, J.) ... 10

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ... 5

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) (Martinez-Olguin, J.) ... 12

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ... 7, 9

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) ... 7

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ... 4, 5, 12

*Ferry v. DF Growth REIT*,
2024 WL 5011949 (S.D. Cal. Dec. 6, 2024) ... 4

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ... 8

*In re Gilead Sciences Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ... 5

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) (Freeman, J.) ... 9, 12

*In re Google Inc. Cookie Placement Cons. Litig.*,
806 F.3d 125 (3d Cir. 2015) ... 13

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) (Davila, J.) ... 7

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) (Beeler, J.) ... 4, 12, 13

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ............ 6

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) (Breyer, J.) ............ 8

*Heiting v. Taro Pharms. USA, Inc.*,
2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) ............ 15

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (Cal. 2009) ............ 8

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. 2024) ............ 8, 10

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. 2012) (Koh, J.) ............ 7, 8, 11

*Johnson v. Blue Nile, Inc.*,
2021 WL 1312771 (N.D. Cal. 2021) ............ 12

*Jones v. L.A. Central Plaza, LLC*,
74 F.4th 1053 (9th Cir. 2023) ............ 4

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ............ 11

*Lau v. Gen Digit. Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) (Lin, J.) ............ 11

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ............ 4

*Loder v. City of Glendale*,
14 Cal. 4th 846 (Cal. 1997) ............ 5

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ............ 4

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) (Van Keulen, J.) ............ 11

*O'Handley v. Padilla*,
579 F. Supp. 3d 1163 (N.D. Cal. 2022) (Breyer, J.) ............ 4

*Pena v. GameStop, Inc.*,
2023 WL 3170047 (S.D. Cal. Apr. 27, 2023) ............ 12

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ............ 13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Posadas v. Goodyear Tire & Rubber Co.*,
2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) ........ 11

*Robins v. Spokeo, Inc.*,
867 F.3d 1108 (9th Cir. 2017) ........ 4

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. 2022) (Seeborg, J.) ........ 12

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) (Rodgers, J.) ........ 9

*Smith v. Facebook, Inc.*,
745 F. App'x (9th Cir. 2018) ........ 9

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 4

*Starkey v. Rushmore Loan Mgmt. Servs. LLC*,
2019 WL 8989907 (C.D. Cal. Dec. 10, 2019) ........ 5

*TransUnion LLC v. Ramirez*,
590 U.S. 413 (2021) ........ 1, 4, 5, 8

*In re U.S.*,
441 F. Supp. 2d 816 (S.D. Tex. 2006) ........ 14

*In re Vizio, Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 7, 11

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) (Alsup, J.) ........ 9, 12, 13

*Xu v. Reuters News & Media Inc.*,
2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) ........ 8

*Yale v. Clicktale, Inc.*,
2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ........ 12

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) (Tigar, J.) ........ 10

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 11

*In re Zynga*,
750 F.3d 1098 (9th Cir. 2014) ........ 7, 10, 13

**Statutes**

18 Pa. Cons. Stat. Ann. § 5702 .................................................. 13

18 Pa. Cons. Stat. Ann. § 5704(4) .................................................. 9, 13

Cal. Penal Code § 20 .................................................. 15

Cal. Penal Code § 631(a) .................................................. *passim*

Cal. Penal Code § 637.2(a) .................................................. 10

Cal. Penal Code § 638, *et seq* .................................................. 2, 9, 14, 15

**Rules**

Fed. R. Civ. P. 12(b), *et seq* .................................................. 4, 9

**Other Authorities**

2015 California Assembly Bill No. 929, California 2015-2016 Regular Session .................................................. 14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This action is a twist on one of many complaints filed in and dismissed by courts across the country challenging a lawful and common arrangement between a business and its analytics service provider. More often, plaintiffs file suit against a website or mobile application *owner* and allege that it installed some sort of analytics software on its app/website that illegally intercepts consumer/plaintiff data without consent. Here, rather than sue Upside, the owner of the mobile application, Plaintiffs Benjamin Glenn and Ara Sardarbegians ("Plaintiffs")—two users of the Upside Mobile Application ("App" or "Upside App.")—filed their Class Action Complaint ("Complaint" or "Compl.") targeting one of Upside's analytics providers, Mixpanel, Inc. ("Mixpanel" or "Defendant"). Plaintiffs' Complaint, however, suffers from multiple fatal defects.

First, Plaintiffs suffered no cognizable injury and therefore lack standing to bring their claim. *TransUnion LLC v. Ramirez*, 590 U.S. 413 (2021). Plaintiffs expressly agreed that Upside could collect their personal information and share it with service providers—including data analytics providers like Mixpanel—when they signed up to use the Upside App. Consequently, even if the collection was performed, Plaintiffs consented to it and there can be no injury. Even absent consent, Plaintiffs fail to plead any facts that would support an invasion into a protected privacy interest. Instead, Plaintiffs rely solely on generalized claims of privacy harm—which would never suffice for Article III standing—and also fail to meet the high bar for an individual privacy injury, which requires pleading not only a "reasonable expectation of privacy" in the information but also that its disclosure constitutes a "highly offensive privacy intrusion." Mixpanel's theoretical ability to receive users' precise geolocation, and other user identifiers such as App users' Android Advertising IDs ("AAIDs") due to configurations set by Upside is not a privacy injury. Further, both Mixpanel's and Upside's Terms (incorporated in the Complaint) make clear that any collection of data by Mixpanel for Upside was done ***for Upside's use alone and no selling or sharing of that information to "build profiles" to share across Mixpanel's customers takes place***. Consequently, there is no injury sufficient for Article III standing and Plaintiffs' case must be dismissed with prejudice.

Even if Plaintiffs could meet their burden to establish standing—which they cannot—each cause of action in the Complaint fails as a matter of law. Again, because lack of consent is an element of each of the three causes of action in the Complaint, Plaintiffs' consent dooms them all. Plaintiffs' wiretapping claims, brought under the California Invasion of Privacy Act ("CIPA"), Penal Code § 631(a), and Pennsylvania's Wiretapping and Electronic Surveillance Act ("WESCA"), 18 Pa. Con. Stat. §§ 5701, *et seq*, fail for additional reasons. Plaintiffs did not (nor could they) plausibly allege that any interception or eavesdropping of the "contents" of a communication occurred while "in transit." Additionally, third-party service providers like Mixpanel are not held liable under the wiretapping statutes where, as here, the allegations indicate that the provider was merely an extension of the party to the communication—in this case, Upside.

Finally, Plaintiffs' trap and trace claim under Cal. Penal Code Section 638.51 claim would still fail because the technologies—like the Software Development Kits ("SDK") and Application Programming Interfaces ("API") at issue in the Complaint—do not qualify as "pen register" devices under CIPA as a matter of law. And even if they did, Plaintiffs have not alleged sufficient facts to demonstrate that Mixpanel *installed* or *used* the pen register when it merely provided the code to its customer (Upside) who installed and configured its own App.

For these reasons, and as further explained below, this Court should grant Mixpanel's Motion and dismiss Plaintiffs' Complaint with prejudice.

## II. BACKGROUND

### A. Mixpanel Is a Service Provider That Helps Website And App Developers Like Upside Analyze Their Data

Mixpanel is a data analytics service provider that offers analytics tools which enable its customers, including Upside, to capture and analyze data on how users interact with the customers' digital product. Compl., ¶ 67; Mixpanel's Request for Judicial Notice ("RJN"), Exh. C, Data Processing Addendum ("DPA") at 2.1.1. Mixpanel allows its customers to "analyze this data with simple, interactive reports that let [customers] query and visualize the data with just a few clicks." Compl., ¶ 67. Mixpanel provides SDKs and APIs that allow its customers to easily integrate Mixpanel's analytics capabilities into their applications. Compl., ¶ 32; *see also* Declaration of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Theodor Dumitrescu ("Dumitrescu Decl."), ¶¶ 4-5. Mixpanel's customers (like Upside) install its SDK and API and set their own configurations based on their own individual preferences, including what data is collected and sent to Mixpanel. *See* Compl., ¶ 129; *see also* Dumitrescu Decl., ¶¶ 5-6; RJN, Exh. B, Mixpanel Terms of Use ("Mixpanel TOU"), at 4.3 (Mixpanel's customers are "solely responsible for identifying and selecting, through its implementation of Mixpanel's integration library, what Customer Content to track and send to the Application Services."); *Id.*, Exh. C, DPA at Schedule 2.

Importantly, Mixpanel does not sell or share customer data or provide advertising services; it simply provides a platform for businesses to analyze and leverage their own data. *See* Dumitrescu Decl., ¶ 8. Mixpanel cannot "retain, use, or disclose…Personal Information for a commercial purpose other than for the limited and specified purposes identified in" its agreements. *See* RJN, Exh. C, DPA at § 2.1.2. It also cannot "combine such Personal Information with personal information that it receives from other sources, except as expressly authorized by [Upside] and permitted under the CCPA." *Id.*

### B. <u>All Upside Users Must Consent To Its Privacy Policy in Which it Discloses That It Shares Personal Data With Service Providers Like Mixpanel.</u>

Prior to using Upside, all users (including Plaintiffs) had to first agree to Upside's Privacy Policy, which expressly discloses that Upside collects certain personal data from users including device identifiers associated with users' mobile device, users' unique social media identifiers, geolocation information and unique user identifiers ("Upside UUID"). *See* Declaration of Alexandra Rahimi ("Rahimi Decl."), ¶¶ 6-7 X, Exh. A (Upside Sign-in Screen). Upside also explicitly informs its users through its Privacy Policy that it "relies on third party service providers to collect and process Personal Data from users directly, which may include through use of an application programming interface (API) on the mobile application." RJN, Exh. A, Upside Privacy Policy. Upside informs users that there are "certain circumstances in which [they] may provide…Personal Data to certain third parties without further notice to" the users, including "data analytics providers." *Id.* The Privacy Policy also states that "Upside and its agents and service providers may…use…Personal Data and other personally non-identifiable information collected

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

through the Services to help…improve the content and functionality of the Services, to better understand…users and to improve the Services." *Id.* Lastly, and importantly, "Upside is not in the business of selling or sharing information that [they]…collect." *Id.*

## III. <u>LEGAL STANDARD</u>

Under Federal Rule 12(b)(1), the Court must dismiss any action that lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). At the core of the Court's jurisdictional inquiry is Article III's standing requirement. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Lujan*, 504 U.S. at 560-61). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Where, as here, a case is "at the pleading stage, the plaintiff must clearly allege facts demonstrating[] each element." *Ferry v. DF Growth REIT*, 2024 WL 5011949, at *3 (S.D. Cal. Dec. 6, 2024) (cit. omitted). A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion LLC*, 590 U.S. at 426. "[E]ven when a statute has allegedly been violated, Article III requires such violation to have caused some real—as opposed to purely legal—harm to the plaintiff." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("a bare procedural violation of a statute is insufficient to establish an injury in fact."). For purposes of Article III standing, "***an injury in law is not an injury in fact***." *Id.* (emph. added). *Spokeo*, 578 U.S. at 341.[1]

[1] In deciding standing, a court may look to evidence outside of the pleadings. *See Jones v. L.A. Central Plaza, LLC*, 74 F.4th 1053, 1057-58 (9th Cir. 2023). Challenges to a plaintiff's standing can be either "factual" or "facial." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 829 (N.D. Cal. 2021) (Beeler, J.). A "factual" attack "contests the truth of the plaintiff's factual allegations" by "introducing evidence outside the pleadings," whereas a "facial" attack "asserts that" the allegations are "insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (cit. omitted). In deciding a factual attack, "courts may consider evidence like declarations submitted by the parties, and the party opposing the motion to dismiss has the burden of establishing [standing] by a preponderance of the evidence." *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1178 (N.D. Cal. 2022) (Breyer, J.).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that threadbare allegations and conclusory statements are insufficient to withstand scrutiny). Pleadings that contain "no more than conclusions … are not entitled to the assumption of truth" that would be otherwise applicable on a motion to dismiss. *Iqbal*, 556 U.S. at 679. Thus, the Court need not "accept as true… allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## IV. <u>ARGUMENT</u>

### A. <u>Plaintiffs Lack Article III Standing.</u>

Plaintiffs lack Article III standing because they fail to plausibly allege that they suffered ***an actual*** injury—let alone harm that is concrete, particularized, and traceable to Mixpanel. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Rather than supply facts, Plaintiffs allege (in conclusory fashion) that Mixpanel's collection of information from Upside App users "constitutes an enormous invasion of privacy." Compl., ¶ 4. This is wholly insufficient. While intangible privacy harms can *sometimes* be concrete enough for Article III purposes, that can only occur ***if*** Plaintiffs allege an "injury traditionally recognized as providing a basis for a lawsuit in American courts"—i.e., an injury under a close "common-law analogue." *TransUnion*, 594 U.S. at 424. Naked assertions of harm that is "traditionally recognized as providing a basis for American courts," is not enough. *Id.* at 417; *Starkey v. Rushmore Loan Mgmt. Servs. LLC*, 2019 WL 8989907, at *3 (C.D. Cal. Dec. 10, 2019) (finding use of the phrase "invasion of privacy" insufficient to allege injury-in-fact). For purposes of Plaintiffs' claims, the relevant common-law analogue is an invasion of privacy claim under California law. *See Loder v. City of Glendale*, 14 Cal. 4th 846, 891 (Cal. 1997).

Thus, to establish Article III standing, Plaintiffs must allege sufficient facts showing two elements: (1) they had a "reasonable expectation of privacy" in the information at issue; and (2) Mixpanel's alleged intrusion was "highly offensive." *In re Facebook Internet Tracking*, 956 F.3d at 601. As outlined below, Plaintiffs have failed to allege either element.

**1. Plaintiffs Do Not Have A Reasonable Expectation of Privacy in Any Information Voluntarily Provided to Upside.**

Plaintiffs cannot plausibly allege that they had a reasonable expectation of privacy over any information collected by Upside during their use of the Upside App and shared with Mixpanel for several reasons.

***First***, Plaintiffs ***consented*** to the collection of their information by Upside and to Upside's sharing of that information with service providers, including "data analytics providers" like Mixpanel. All Upside App users, including Plaintiffs, were required to consent to Upside's Privacy Policy upon creation of an Upside Account. *See* Rahimi Decl., ¶¶ -6, Exh. A. Plaintiffs specifically agreed that Upside could collect certain "Personal Data" from them to provide Upside's services, including (1) "unique social media identifier(s)", (2) "device identifier[s] associated with [user's]…mobile device", (3) user's "history of Upside use, including transaction timestamps, site identifiers, transaction totals, Cash Back rewards earned, and the first six and last four digits of any credit cards used", (4) users' "geolocation information", and (5) "unique user identifier[s] (Upside UUID)." RJN, Exh. A, Upside Privacy Policy. These categories encompass every type of information Plaintiffs identify in the Complaint. *See* Compl., ¶¶ 3, 34.

Plaintiffs also agreed to third-party service provider collection and processing, as well as to Upside sharing their information with third parties including "data analytics providers" like Mixpanel. Plaintiffs agreed that "third party service providers [could]…collect and process Personal Data from users directly…includ[ing] through use of an application programming interface (API) on the mobile application." RJN, Exh. A, Upside Privacy Policy. They also agreed that in certain circumstances Upside could provide their "Personal Data to certain third parties without further notice…[including] data analytics providers." *Id.* Upside's Privacy Policy also informed Plaintiffs that "Upside is not in the business of selling or sharing information that

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

[they]…collect." *Id.* Thus, Plaintiffs did not have a reasonable expectation that the information they voluntarily provided would not be shared with Mixpanel for the specific purpose of providing Upside analytics services. *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (no reasonable expectation of privacy where collection practices were "expressly disclosed").

***Second***, even if consent was not provided, courts routinely have held that website visitors have no reasonable expectation of privacy in the very type of record and header information at issue in this Complaint, including the geolocation, AAID, unique user ID, and unique device ID. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. 2012) (Koh, J.) ("Even assuming this information was transmitted … such disclosure [of information including device identifier number, personal data, and geolocation information] does not constitute an egregious breach of social norms."); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) (concluding that there is no reasonable expectation of privacy in the URL of a website the plaintiff previously had visited or in basic identification information); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1206 (S.D. Cal. 2024) ("The allegations that Defendant allowed a third party to collect, among other things, the user's account name, IP address, geographic location, and site the user previously visited does not give rise to an invasion of privacy"); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019) (Davila, J.) (users had no reasonable expectation of privacy in their geolocation while using the website of the defendant company); *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) ("Courts have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information[.]"); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 945 (S.D. Cal. 2024) (finding allegations that a third-party software provider captured plaintiff's "personal details," "browsing history," and "IP address" to be insufficient to demonstrate that plaintiff suffered a "serious invasion of a protected privacy interest").

As such, Plaintiffs have failed to plausibly allege (because they cannot) that they had a reasonable expectation of privacy over information voluntarily provided and collected during their use of the Upside App.

\\

### 2. Nothing Mixpanel Did Was "Highly Offensive."

Even if Plaintiffs could establish that they had a reasonable expectation of privacy in the information purportedly collected (and they cannot), they still fail to establish that Mixpanel engaged in "highly offensive" conduct. While the highly offensive determination is context specific, courts agree that the alleged invasion must be "sufficiently serious and unwarranted as to constitute an egregious breach of the social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (Cal. 2009). Indeed, other courts in this district have held "that data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (Breyer, J.) (collecting cases); *In re iPhone Application Litigation*, 844 F. Supp. 2d at 1063 ("[T]he information allegedly disclosed to third parties included the unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices. Even assuming this information was transmitted without Plaintiffs' knowledge and consent, a fact disputed by Defendants, such disclosure does not constitute an egregious breach of social norms.").

Just as in *In re iPhone*, even assuming that Plaintiffs' personal information was collected and transmitted without their knowledge (which it was not), Plaintiffs have still failed to allege any facts establishing that Mixpanel's conduct "amounts to a serious invasion" of the alleged protected privacy interest. Ultimately, this case involves nothing more than routine commercial behavior: Mixpanel provides a platform for businesses like Upside to analyze their own data. The *customer*, not Mixpanel, installs the SDK and decides what data are processed, and Mixpanel does not sell the data or commingle it with other clients' data for "profile building" or otherwise use it for Mixpanel's own purposes. *See* Dumitrescu Decl., ¶¶ 6-8; RJN, Exhs. B & C. There is no privacy intrusion whatsoever, let alone one that is "highly offensive." Without an intrusion into a protectable privacy interest that is sufficiently egregious, Plaintiffs have *at most* alleged a "bare procedural violation[], divorced from any concrete harm," which is insufficient under Article III. *TransUnion*, 594 U.S. at 440 (cit. omitted).

Accordingly, Plaintiffs' Complaint must be dismissed. *See, e.g.*, *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *1 (C.D. Cal. 2024), *adopted*, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024)

(dismissing CIPA claim for lack of standing due to plaintiff's failure to allege a concrete injury); *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *1 (S.D.N.Y. Feb. 18, 2025) (same); *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *1 (S.D.N.Y. Feb. 13, 2025) (same).

**B. <u>Plaintiffs' Consent Defeats Each Cause of Action.</u>**

Even if Plaintiff can establish standing—which they cannot—the Complaint still fails under Rule 12(b)(6). As an initial matter, all of Plaintiffs' claims fail for the threshold reason that they consented to the collection and sharing of their information. *See infra* at IV.A.1. While Plaintiffs include boilerplate language that they did not consent to Mixpanel's collection, Upside's Terms and Privacy Policy, which were incorporated by reference in the Complaint, demonstrate that the opposite is true. *See id.* Where, as is the case here, consent is an element of the claim, a Court should consider whether consent was provided when ruling on a motion to dismiss. *See Silver v. Stripe Inc.*, 2021 WL 3191752, at *2 (N.D. Cal. July 28, 2021) (Rodgers, J.); *Smith v. Facebook, Inc.*, 745 F. App'x, 8, 9 (9th Cir. 2018) (affirming motion to dismiss based on consent). Here, each of the three statutes at issue in the Complaint precludes liability if consent is provided. *See* Cal. Penal Code § 631(a) ("without the consent of all parties"); Cal. Penal Code § 638.51 (no violation "[i]f the consent of the user . . . has been obtained"); 18 Pa. C.S. § 5704(4) ("[i]t shall not be unlawful… where all parties to the communication have given prior consent"). As such, Plaintiffs' claims all fail as a matter of law and should be dismissed with prejudice.

**C. <u>Plaintiffs' CIPA Section 631(a) Claim Fails.</u>**

CIPA Section 631(a) prohibits a defendant from itself engaging in, or aiding another to engage in, one of three activities: (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," or (3) using or "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *FCA*, 726 F. Supp. 3d at 1196 (citing *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978)); *see* Cal. Penal Code § 631(a). Although not entirely clear from the Complaint, Plaintiffs

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

appear to assert claims under the second and third clauses of § 631(a).[2] *See* Compl., ¶¶ 109-110. Both claims fail.

1. **No Statutory Standing.**

As a threshold matter, Plaintiffs lack statutory standing to assert their CIPA wiretapping claim. Under CIPA's remedy provision, a plaintiff must have been "injured by" a violation of CIPA to bring an action. *See* Cal. Penal Code § 637.2(a). As detailed above, Plaintiffs have not plausibly alleged (and cannot establish) a privacy injury. *See infra* at IV.A. Plaintiffs have not identified any actual concrete harm suffered as a result of Mixpanel's actions that in addition to an alleged technical statutory violation would support a claim. *See, e.g.*, *Vivint*, 2024 WL 5179916, at *3 ("Plaintiff offers only conclusory allegations regarding [] use of [website technology], and such bald allegations of statutory violations are insufficient to confer standing.").

2. **No Violation of the Second Clause of Section 631(a).**

The second clause of § 631(a) is violated only where a third party "reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit." *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 951 (N.D. Cal. 2024) (Tigar, J.) (citing Cal. Penal Code § 631(a)). Plaintiffs fail to plead essential elements of a claim for intercepting communications. They have not alleged, as they must, the "contents" of the allegedly intercepted communication or that it was intercepted while "in transit."

a. ***<u>Plaintiffs do not allege that the "contents" of their communications were intercepted.</u>***

Plaintiffs' claim under Section 631(a) fails because they have not alleged the "contents or meaning" of any intercepted communication. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (Koh, J.) (Section 631 prohibits only the "unauthorized access of the contents of any communication"). Under CIPA, the "contents" of a communication are limited to "the intended

[2] To the extent that Plaintiffs allege violation of the first clause of § 631(a), they cannot do so, as a matter of law, because the first clause does not apply to online conduct. *See Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (Alsup, J.) ("[T]he first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet."); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825-26 (N.D. Cal. 2020) (Freeman, J.) (collecting cases).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

message conveyed by the communication and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d at 1106. The Complaint does not include any factual allegations about the "intended message" of any communication. And, Plaintiffs themselves allege that Mixpanel's "SDK and API do not collect the content of Plaintiff Glenn's and California Class Members' electronic communications with the Android mobile applications." Compl. ¶ 121.

Plaintiffs' theory is that the collection of their "interactions" with the App—e.g., geolocation, AAID, device IDs and User IDs—constitutes "content" of a communication sufficient to establish their Section 631(a). *See* Compl., ¶¶ 5, 34, 39. 47, 51. However, Plaintiffs provide no specifics of these "interactions," and even if they did, courts have held that the collection of this type of record information is not a communication, nor is it content. *See e.g., Posadas v. Goodyear Tire & Rubber Co.*, 2024 WL 5114133, at *5 (S.D. Cal. Dec. 13, 2024) (Plaintiff's allegation of "'interaction through the website'…[was] insufficient to assert a claim under section 631(a) because the Court [could not] determine whether the information constitutes "contents" for purposes of a CIPA violation [without the]…specifics of the shared information"); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *14 (N.D. Cal. Feb. 2, 2021) (Van Keulen, J.) ("data on when and how often an Android Smartphone user opens and runs non-Google apps and the amount of time spent on the apps" is not content); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (dismissing Section 631(a) claim finding that "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" do not qualify as content); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1061 (mere geolocation data is not the "contents" of a communication). Just as in the cases cited above, Plaintiffs' allegations amount to nothing more than record information which is insufficient to state a claim under Section 631(a).

**b. *Plaintiffs do not allege that their communications were intercepted while "in transit".***

Plaintiffs also fail to plausibly allege, as they must, that their communications were "stop[ped], seize[d], or interrupt[ed] in progress or course before arrival." *Konop v. Hawaiian*

*Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Lau v. Gen Digit. Inc.*, 2024 WL 1880161, at *1 (N.D. Cal. Apr. 3, 2024) (Lin, J.) (wiretapping concerns "the unauthorized *interception* of communications, not any subsequent storage and/or use"). The Court should reject Plaintiffs' conclusory boilerplate allegation (Compl., ¶ 109) that merely restates the text of the rule without providing any facts to describe the alleged interception. *See In re Vizio*, 238 F. Supp. 3d at 1228 (dismissing wiretap claim because the "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was only supported by "vague allegations about how Vizio's data collection occurs in real-time."); *Rodriguez v. Google LLC*, 2022 WL 214552, at *1-2 (N.D. Cal. 2022) (Seeborg, J.) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit."); *Pena v. GameStop, Inc.*, 2023 WL 3170047, at *6 (S.D. Cal. Apr. 27, 2023). Contemporaneous interception is also implausible in light of Plaintiffs' allegation that the SDK is code incorporated into the Upside App itself. *See e.g.*, Compl., ¶ 109; *see also Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (Martinez-Olguin, J.) (vague allegation that software was "plugged into" website, and that chats were routed through the software, was insufficient because it "fail[ed] to explain how the software works or how the interception occurs").[3]

**3. The Section 631(a) Party Exception Also Applies.**

Section 631 exempts a "'party' to the communication." *In re Facebook Internet Tracking*, 956 F.3d at 607. Courts have applied this exemption to third-party service providers where, as here, the allegations indicate that the provider was merely an extension of a party. *See, e.g.*, *Noom*, 533 F. Supp. 3d at 832; *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771 (N.D. Cal. 2021) (Beeler, J.); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (Beeler, J.) ("Clicktale is not a third-party eavesdropper. It is a vendor that provides a software service that allows its clients to monitor their website traffic."). Most importantly, a § 631(a) claim against a

[3] A violation under the third clause of § 631(a) is contingent on a finding of a violation of the first or second clause of § 631(a). *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 827. Because Plaintiff cannot establish an underlying violation under the first two clauses, as discussed above, Plaintiff cannot establish an underlying violation of the third clause.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

third party requires sufficient factual support demonstrating the ***independent use*** of collected data or information by the third-party vendor. *See Williams*, 2022 WL 17869275, at *3.

Here, Plaintiffs' allegations evidence that Mixpanel was acting as an authorized extension of Upside. Plaintiffs allege that Mixpanel's customers like Upside "install [Mixpanel's] SDK and API and configure them for their specific use." Compl., ¶ 129; *see also* Dumitrescu Decl., ¶¶ 3-5; RJN, Exh. B, Mixpanel Terms of Use at 4.3. Though the Complaint tries to obfuscate Mixpanel's role as a service provider and plead out of the service provider exception by asserting that Mixpanel can use the collected information "to 'maintain and improve its own services,' and for its 'own business purposes,'" (Complaint ¶78) the totality of Plaintiffs' allegations—and Mixpanel's DPA—show that Mixpanel simply provides a platform for businesses to analyze and leverage their own data. *See* RJN, Exh. C, DPA. Simply "provid[ing] a tool" that "allows [a business] to record and analyze its own data" does not make a service provider an eavesdropper. *Graham*, 533 F. Supp. 3d at 832 (vendor captured "clients' data" and allowed client to analyze it) (cit. omitted); *Williams*, 2022 WL 17869275, at *3 (distinguishing vendors that use client data for separate business purposes).

**D. <u>Plaintiffs' WESCA Claim Fails.</u>**

Like Section 631(a), WESCA prohibits the interception, disclosure, or use of the contents of communications without the consent of all parties. *See* 18 Pa. Cons. Stat. Ann. §§ 5702, 5704(4). To state a claim under WESCA, Plaintiffs must allege: (1) that their communications were intercepted as defined by the statute; (2) that the communications contained contents as defined by the statute; and (3) that the interception occurred without consent. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 125 (3d Cir. 2022). Plaintiffs fail to meet these requirements.

An "intercept" is the "[a]ural or other acquisition of the *contents* of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." 18 Pa. Cons. Stat. Ann. § 5702. "[C]ontents" are "information concerning the substance, purport, or meaning of that communication." *Id.* As they do for Section 631(a), courts distinguish "contents" from "mere record information" which includes data such as IP addresses, device identifiers and URLs. *In re Google Inc. Cookie Placement Cons. Litig.*, 806 F.3d 125, 135-39 (3d Cir. 2015); *In re Zynga Priv.*



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Litig.*, 750 F.3d at 1106-07. The WESCA "content" analysis is essentially the same as the analysis under Section 631(a). *See Supra* Section IV.B.2. Thus, Plaintiffs fail to allege that any "contents" of their communications were intercepted by Mixpanel. And, even if Plaintiffs' Complaint could establish a technical violation of WESCA, their claims fail because they do not allege any concrete or particularized harm. *See supra*, Section IV.A.

**E. <u>Plaintiffs' Section 638.51 Claim Fails.</u>**

Plaintiffs assert a Section 638.51 claim as an alternative, should the Court dismiss their Section 631(a) wiretapping claim on the grounds that Mixpanel did not collect the "contents" of their communications (Compl., ¶ 116). Plaintiffs' Section 638.51 claim is equally deficient.

*First*, as mentioned above, Plaintiffs lack statutory standing to assert their pen register claim because they have not alleged concrete harm caused by the SDK and API. *See* Section IV.A, C.1. *Second*, Plaintiffs do not plausibly allege that the SDK and API are pen register devices. Under CIPA a "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information, . . . but not the contents of a communication." Cal. Penal Code § 638.50(b). This definition is in line with the typical and historical usage of pen registers by law enforcement personnel to conduct ***telephonic*** surveillance by capturing ***outgoing telephone calls***. *See In re U.S.*, 441 F. Supp. 2d 816, 818 (S.D. Tex. 2006); *see also* Bill Analysis, A.B. 929 (pen registers "generally track [] outgoing telephone calls"). Furthermore, to secure a court order for the installation of a pen register, the applicant must specify the exact telephone number to which the pen register will be connected. *See, e.g.*, Cal. Penal Code § 638.52(d)(1)-(3) (requiring that an order "authorizing or approving the installation and use of a pen register" shall specify, *inter alia*, the "identity, if known, of the person to whom is leased or in whose name is listed the ***telephone line to which the pen register … is to be attached***" and the "number and, if known, physical location of the ***telephone line to which the pen register … device is to be attached***[.]") (emph. added). In sum, given its historical usage, and the cross-referenced provisions, Section 638.51 was only meant to apply to devices that are used in telephonic surveillance ***to collect incoming telephone calls***—that is not what Plaintiffs allege in the Complaint. Indeed, Plaintiffs' allegations

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

about the data allegedly collected by the SDK and API—which does not include incoming telephone calls—only *confirms* that the SDK and API are not pen registers.[4]

*Third*, even if Mixpanel's SDK and API are pen registers under CIPA (they are not), Plaintiffs' Section 638.51 would still fail. Section 638.51 makes it unlawful for a person to "***install*** or ***use*** a pen register … without first obtaining a court order pursuant to Section 638.52 or 638.53." Cal. Penal Code § 638.51. However, Mixpanel's SDK is not installed or used *by Mixpanel*—it is installed and used by Upside to allow for the collection of certain data for later analysis. *See* Compl., ¶¶ 3, 32. Although Mixpanel developed and makes the SDKs, it is Mixpanel's customer (Upside) who installs and configures the SDKs to specify the types of data that is collected and sent to Mixpanel and inserts it into its own App's code. *See* Dumitrescu Decl., ¶¶ 3-5. Thus, Section 638.1 does not apply.

And *fourth*, because CIPA is a criminal statute, to establish liability, Plaintiff must establish the scienter element. *See* Cal. Penal Code § 20 ("In every crime or public offense there must exist a union, or joint operation of act and intent. As such, *assuming arguendo* that the SDK and API qualify as a pen register *and* Mixpanel "installed" or "used" them (neither are supported), in order to be liable, Mixpanel must have installed the SDK and API with knowledge and intent that it illegally collects information without a court order. Here, Plaintiffs have not alleged any facts (nor can they) that *Mixpanel* had any intent to engage in criminal activity. Plaintiffs' inability to allege that Mixpanel possessed the requisite scienter is dispositive of their claim and it must be dismissed. *See, e.g.*, *Heiting v. Taro Pharms. USA, Inc.*, 2023 WL 9319049, at *6 (C.D. Cal. Dec. 26, 2023) (dismissing CIPA claim for lack of scienter).

## V. <u>CONCLUSION</u>

For the foregoing reasons, Mixpanel respectfully requests dismissal of the Complaint.

\\

[4] The legislative history of Section 638.51 also makes clear that the Legislature did not intend to expand CIPA's definition of a "pen register". *See* 2015 California Assembly Bill No. 929, California 2015–2016 Regular Session ("Assembly Bill 929"). The Legislative Counsel's Digest, at the beginning of Assembly Bill 929, explained the purpose of the bill: to "clarify that any location information obtained by a pen register or a trap and trace device is limited to the information that can be determined ***from the telephone number***." *Id.* (emph. added).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Dated: April 8, 2025,

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Kamran B. Ahmadian*
Bethany G. Lukitsch
Kamran B. Ahmadian

*Attorneys for Defendant*
MIXPANEL, INC.